DELAWARE POWER & LIGHT COMPANY, a Delaware corporation, Plaintiff,

*vs.*

N. MAXSON TERRY *et al.,* Defendants.

*New Castle, September 19, 1963.*

*David F. Anderson,* of Berl, Potter & Anderson, Wilmington, for plaintiff.

*S. Samuel Arsht* and *Richard H. Allen,* of Morris, Nichols, Arsht & Tunnell, Wilmington, for defendants.

SEITZ, Chancellor: Plaintiff, Delaware Power & Light Company, seeks a declaratory judgment determining whether or not it is entitled to receive compensation for the relocation of its poles and wires situated along Sussex Road No. 556. The relocation was required by the reconstruction of the road by the defendant, the Delaware State Highway Department ("defendant").

Plaintiff is a public utility corporation and, among other things, transmits electricity through wires erected upon poles. Plaintiff obtained grants of easements from the owners of lands abutting on Sussex Road No. 556 permitting it to place its poles and wires on such lands. The earliest of such easements was granted on October 20, 1939, and subsequent easements were obtained periodically with the last one being granted on May 26, 1959. Plaintiff from time to time installed its poles and wires along the roadway. In 1960, defendant engaged in a project of widening, relocating and resurfacing this public road, and the project required the use and occupancy of the land upon which plaintiff's poles and wires were situated. Plaintiff relocated its poles and wires, but it was agreed by the parties that such action by the plaintiff was without prejudice to its present claim. Parenthetically, the defendant obtained easements for the purpose of widening the road from the abutting landowners.

Plaintiff contends that since its facilities were located on private property pursuant to easements granted by the owners thereof, the compulsory removal of such facilities was a taking of its property for

which it is entitled to receive just compensation. Defendant, on the other hand, maintains that plaintiff's pole line was located without defendant's permission within the highway right-of-way and therefore the relocation expenses incurred must be borne by it.

Defendant further asserts, in the alternative, that even if the poles and wires were not located within the right-of-way of the highway, they were located "along" the highway and that pursuant to 26 *Del.C.* § 901 the plaintiff was required to obtain the defendant's consent before so locating its lines, which it failed to do. Parenthetically, as a condition of its giving such consent the defendant, as a matter of practice, requires a utility company to agree to relocate its facilities at its own expense when requested to do so. Defendant contends that plaintiff could not circumvent the consent requirement of the statute by erecting its lines "along" the highway without the Highway Department's permission. Plaintiff denies that the statute in question applies to poles and lines erected on private property outside the highway right-of-way, which, it contends, was the situation here. Thus, plaintiff takes the position that its lines were not "along" the highway within the meaning of § 901 and urges that it was not obliged to obtain defendant's consent before erecting its facilities.

I turn first to the claim of the defendant that it obtained a prior prescriptive right in the nature of a public right-of-way in the area where the plaintiff's poles were located. Does the evidence in support of such claim establish the requisite adverse user?

Sussex Road No. 556 was laid out in 1809 as a public road pursuant to statute. I *Del. Laws, Chap.* 131(a). Both parties agree that the statutory width of this road was thirty feet. However, defendant contends that such width constituted a minimum standard and that in the present case the actual width of the road was extended by user to include the land upon which plaintiff's facilities were subsequently located.

What are the facts? The road here involved prior to its reconstruction was an unpaved country road without any definite bound-

aries. The traveled portion was firmly packed and the sides sloped into a ditch line of soft dirt. Along most of this road outside the ditch line lay a growth of weeds which extended to cultivated areas. There were no fences or other monuments by which the boundaries of the road could be definitely fixed. Plaintiff's facilities, with the exception of one pole as to which there is no claim, were located more than fifteen feet from the center line of the road. The poles stood at the edge of the cultivated portion of land and in some instances were surrounded by growing crops.

Prior to 1935, *i.e.,* prior to the emplacement of any of plaintiff's poles, the repair and maintenance of the road in question were under the supervision of the Levy Court of Sussex County. Since then such matters have been supervised by the defendant. Defendant's employees testified that even in recent times no definite plan existed as to the extent of the roadway area to be maintained. In practice only that area was mowed which was not being used by the abutting owners. This maintenance, apart from general maintenance, consisted of scraping the road, keeping it clear of snow, and mowing the weeds twice a year whenever money was available. No evidence was submitted as to the area maintained prior to the erection of plaintiff's poles, which took place from time to time from 1939 to 1959. Before their recent removal, some of the abutting owners plowed toward the road and beyond the poles with deviations to avoid the poles. This pattern of plowing suggests that had the poles not been physically present there, such areas would also have been plowed. Since defendant's policy was to maintain only the area not under cultivation, it is not unreasonable to infer that the areas where the poles were located had not been maintained by defendant prior to their installation.

It is defendant's contention that regardless of the limits of the road as set by statute, its maintenance action enlarged the right-of-way of the road by prescriptive use. Defendant says that this prescriptive use ripened before plaintiff obtained its easements to erect wires and poles and that plaintiff's easements are inconsistent therewith. Certainly defendant obtained no prescriptive rights superior to plaintiff's easements once plaintiff's poles and wires were erected on the land.

■ Did defendant obtain rights superior to plaintiff's easements by prescriptive use? One may reasonably infer from the fact that the abutting owners granted easements to plaintiff for the erection of its facilities that they considered that they then had the right to make such conveyances. As to the maintenance by defendant of land beyond its right-of-way, such conduct was not of the character or consistency to warrant the inference that it was a user inconsistent with the rights of abutting owners. The proprietary action on the part of the abutting owners in granting easements to plaintiff when combined with defendant's subservient attitude in its maintenance policy tends to rebut defendant's claim of a prescriptive right to that portion of land upon which plaintiff's facilities were located. In summary, defendant failed to sustain its burden of proving the requisite adverse user of the area involved.

It need not be decided in this proceeding whether the right-of-way itself presently extends beyond the thirty feet established by statute. All that has been decided here is that defendant did not acquire as against plaintiff superior rights to the area formerly occupied by plaintiff's facilities.

I come next to the question as to whether plaintiff erected its lines contrary to the mandate of § 901 requiring the consent of defendant prior to the construction of such facilities "along any highways" within this state. Having failed to obtain any such consent, plaintiff tacitly concedes that if its lines come within the terms of § 901 as being "along" the highway, it is not entitled to be compensated for the compulsory removal of its lines and poles.

I come then to the relevant statutory provision which is 26 *Del.C.* § 901:

"§ 901   Location of lines; eminent domain

"(a) Any telegraph corporation, any telephone corporation or any corporation using lines or wires for the transmitting of electrical current, whether created by prior special act or organized under chapter 1 of *Title* 8, may erect, construct and maintain its telegraph or telephone lines or its wires for transmitting elec-

trical current, and the necessary fixtures for the same through and across or under any of the canals and canal lands, rivers or other waters, and also along any highways within the limits of this State, outside of highways within the limits of and maintained by incorporated cities and towns, subject to the approval or authority of the public authority having charge or control of such highways, and also subject to the right of the owners of the fee on such highways and to the owners abutting upon such highways to full compensation to the extent that their property is taken or burdened.

"(b) Whenever any such corporation cannot agree with any such owner as to purchase or damages, the corporation may proceed for the condemnation of any such franchises, easements, canals, canal lands, rivers or other waters or highways, or burdens imposed upon landowners abutting upon any highways, whether owners of the fee in the bed of such highways or not, in manner prescribed by chapter 61 of *Title* 10."

Standing alone, subsection (a) of § 901 cannot be construed with any precision with respect to the matters here in issue. The phrase "along any highways" could, I think, equally refer to poles placed on private land outside the right-of-way of the highway as to poles situated within such right-of-way. To assist in interpreting the scope of this provision, therefore, it is necessary for the court to consider the implication of any construction that might be placed upon it.

Subsection (a) of the statute purports to confer powers of eminent domain on utility companies with respect to certain types of property therein specified. If defendant's construction of subsection (a) were adopted by the court, it would follow that a power of eminent domain could be exercised by a utility company with respect to private property adjoining a highway as well as those lands directly in use for highway purposes. I say this because defendant is in effect contending that the term "along any highways", when describing the lands subject to its control, includes land outside the highway's right-of-way.

The impropriety of adopting defendant's approach to the construction of the statute is made clear when subsection (a) is compared with subsection (b). Subsection (b) of § 901 indicates, albeit somewhat inartistically, that a power of condemnation is granted to utility companies only under limited circumstances. One such instance is the condemnation of "highways". Similarly, as I read the statute, such a company may proceed for condemnation with respect to " * * * burdens imposed upon landowners abutting upon any highways, whether owners of the fee in the bed of such highways or not * * * ".

Nowhere, with the exception of certain enumerated cases not applicable here, does the statute purport to deal with the condemnation of private property outside the highway proper. The reference in subsection (b) to "burdens imposed upon landowners abutting upon any highways" refers to the situation where lines erected within the highway interfere with an abutting owner's easements of access, light, air, etc. Such an owner is given a right of compensation by the statute even though he does not own the fee in the bed of the highway and even though the facilities in question are not erected on his land. The significant point here for our purposes, however, is that there is no general provision in the statute compensating an abutting owner whose lands are directly taken by a utility company for the erection of poles and the like.

Subsection (a), when read in the light of subsection (b), clearly sustains this construction of the statute. Subsection (a) states that the placement of facilities on the lands therein specified is "* * * subject to the right of the owners of the fee on such highways and to the owners abutting upon such highways to full compensation to the extent that their property is taken or burdened." When one compares subsection (a) with subsection (b), it is readily apparent that the phrase "taken or burdened" in such portion was not meant to apply seriatim to both the owner of the fee of the highway and the abutting owner. Rather, I believe, "taken" was meant to apply to the former and "burdened" to the latter. "Taken" has but one meaning here. In contrast, the term 'burdened", especially when used in conjunction with "taken", connotes something other than a taking. Such a con-

struction is consistent with the view, expressed before, that the statute only purports to deal with the situation where the poles were erected within the right-of-way of the highway and where the only possible damage to the abutting owner was an indirect burden on certain easements.

The statute then, fairly read, does not require the payment of compensation to an abutting owner whose lands "along" a highway are required by a utility company for the purpose of erecting its poles, etc. This surely lends some color to the language of subsection (a) authorizing such companies to exercise a power of eminent domain in erecting their facilities "along any highways". I am satisfied that "along any highways" must be read as referring exclusively to lands lying within the right-of-way, since a construction which would include private lands of the kind involved here would amount to an authorization to such companies by the Legislature to use private property without paying just compensation. Since such a result would be contrary to the Constitution, the court is disposed to favor that construction which does not run afoul of fundamental law.

I therefore conclude that "along any highways" as employed in § 901 does not apply to the use of private land abutting upon a public right-of-way. It follows that in placing its poles on private property the plaintiff was not required to obtain the defendant's consent. Under such circumstances plaintiff is admittedly entitled to just compensation for the compulsory removal of its facilities and a declaratory judgment to that effect will be entered. Since proceedings for the condemnation of private property are exclusively within the jurisdction of the *Superior Court* (10 *Del.C.* § 6102), a judicial determination of the extent of the compensable damage to plaintiff must await a hearing in that forum.

Present order on notice.